United States Courts
Southern District of Texas
FILED
*July 07, 2022*
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-21-404 |
| WARREN R. LLOYD, Sr., Defendant. | § § § | JUDGE SIM LAKE |

## PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, United States Attorney for the Southern District of Texas, and Richard D. Hanes, Assistant United States Attorney, and the defendant, Warren R. Lloyd, Sr. ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count Two of the Indictment. Count Two charges Defendant with aiding and abetting possession with the intent to distribute marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and D and Title 18 United States Code Section 2. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 21, United States Code, Sections 841(a)(1) and D, is imprisonment of not more than 5 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 2 years. *See* Title 18, United States Code, sections 3559(a) and 3583(b)(2). Defendant



acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to 2 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Cooperation

4. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, not oppose the forfeiture of assets contemplated in this

agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

5. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to Theft of Mail by Postal Employees and related offenses. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

### The United States' Agreements

6. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count Two of the indictment and persists in that plea through sentencing, ~~and if the defendant does not challenge the use of~~

3

~~Counts One, Three, Four, and Six of the indictment in the calculation of the offense level in the calculation of his sentencing range for Count Two~~, and cooperates in the prosecution of his co-defendants, and if the Court accepts this plea agreement, the United States will move to dismiss the remaining counts of the indictment at the time of sentencing; *[handwritten initials]*

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

7. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

8. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

4

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

9. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

10. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may

5

be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

11. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count Two of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

In December of 2019, during an audit of US Postal databases intended to identify possible narcotics trafficking through the mail, OIG agents with the Office of the Inspector General identified Warren LLOYD, Sr. as possibly being involved in narcotics trafficking through the mail. LLOYD was assigned as a rural carrier at the Bear Creek Station in HTX. LLOYD was identified as receiving an unusually high number of suspicious parcels on his route which originated from California. In reviewing the delivery scans of these parcels it was discovered that the points of delivery were not the addresses listed on the parcels.

On February 7, 2020, OIG was alerted to a suspicious Priority Mail parcel destined for delivery to 6606 Loch Bruceray Drive, HTX 77084, which was on LLOYD's route, R049. Research determined that the addressee, Jerry Douglas, was not associated with that address, and

that the sender, Martha Douglas, was not associated with the return address. The parcel was scheduled for delivery on February 10, 2020.

On February 10, 2020, OIG inspectors conducted surveillance of LLOYD as he delivered mail along his route, R049. Inspectors checked the mailbox at 6606 Loch Bruceray Drive immediately after LLOYD delivered mail to the address and discovered that the suspicious parcel had not been delivered by LLOYD. A later review of LLOYD's PTR report which contains the geo scan of delivered packages and the coordinates of the locations where they are delivered showed that the parcel was delivered near the intersection of Autumn Trails Lane and Glenstein Drive in Houtson, Texas, approximately 6 miles from the delivery address on the parcel.

On March 11, 2020 two covert surveillance cameras were installed in the mail delivery vehicle assigned to LLOYD and Cynthia THOMAS, one capturing the driver's area and one capturing occurrences behind the vehicle.

On March 21, 2020 LLOYD delivered a parcel a significant distance from the intended recipient address. The surveillance video showed LLOYD meeting with a black male who was travelling in a silver Ford Taurus. The black male approached the driver's side of the mail truck and placed something on the floorboard of the truck. LLOYD then scanned the parcel and handed it to the black male who got back in his car and left the area. LLOYD is seen retrieving the item from the floor and then is seen counting money and placing it in his pocket.

On March 28, 2020, while THOMAS was delivering mail along route R049, the surveillance cameras recorded her meeting with LLOYD who was in a silver Dodge Ram. THOMAS is seen handing a parcel through the windows of the vehicles to LLOYD and then

scanning the parcel as LLOYD holds it. After handing the package to LLOYD, THOMAS handed him a cup. Later in the day, THOMAS met with LLOYD again and he handed her the cup back.

On April 4, 2020, OIG was alerted to a suspicious parcel which was destined for delivery to 6606 Loch Bruceray Drive, HTX on April 6, 2020.

On April 6, 2020, inspectors surveilled THOMAS as she delivered mail along route R049. While THOMAS scanned the parcel as being "DELIVERED, LEFT WITH INDIVIDUAL," the geo-location of the scan was several houses away from the intended delivery location. Upon checking the location for signs of delivery of the parcel, inspectors saw that there were no vehicles at the address and that the parcel was not in the mailbox or left on the porch.

OIG continued its investigation of LLOYD and THOMAS through April and May, 2020, during the course of which four suspicious Priority Mail parcels were to be delivered along the route. However, some of the parcels were scanned as delivered a significant distance from the address on the parcel.

On April 6, 2020, while THOMAS was delivering mail along route R049. The surveillance camera recorded THOMAS scanning a parcel at the intended address, but not leaving the parcel at the address. Later, the surveillance cameras recorded her meeting with LLOYD and handing him the parcel and a jar. The two met again later in the day and LLOYD returned the jar to THOMAS.

On April 27, 2020, surveillance video recorded LLOYD as he delivered a parcel to a third party far from the intended recipient address. In the video, LLOYD is seen meeting with a black male who gave cash to LLOYD, who thereafter scanned the parcel and gave it to the black male. Later that same day, LLOYD again met with the same person. Surveillance video showed LLOYD

and the black male meeting at the rear of the mail vehicle, shaking hands and hugging, after which the male handed LLOYD something to LLOYD and left.

On May 4, 2020, while delivering mail along route R049, LLOYD met with a black male driving the same Ford Taurus and delivered a parcel to him. Surveillance cameras recorded LLOYD as he met the black male a significant distance from the intended address of the parcel. The black male handed LLOYD cash and LLOYD scanned the parcel and gave it to the black male. The black male returned to the Ford Taurus, and after a few minutes, again exited the vehicle and handed LLOYD a package. Later video showed that the package contained suspected drugs.

On May 12, 2020, surveillance was conducted on LLOYD who had taken possession of a suspicious parcel for delivery that day. Surveillance video showed LLOYD scanning the parcel close to the recipient address, however he did not deliver the parcel there. Instead, at the end of his route he drove to a building located at 16727 Spencer Road, HTX and parked. LLOYD was soon met by a female driving a Mazda minivan, TX tag MHZ-3013. LLOYD was seen handing the parcel to the woman who then departed the area. LLOYD then drove back to Bear Creek Post Office.

On June 11, 2020, OIG agents conducted surveillance on LLOYD as he delivered a suspicious parcel on route R049. The parcel was scanned approximately 1.3 miles from the intended address, 16854 Blend Stone, HTX 77084. Surveillance video showed LLOYD meeting with a black male and scanning and giving him the parcel while the black male gave LLOYD money. LLOYD is also seen on the video counting the money.

On July 9, 2020, the surveillance camera at the rear of LLOYD's vehicle was disabled. However, surveillance video from the driver's area showed LLOYD as he scanned a suspicious

9

parcel approximately 2 tenths of a mile from its delivery destination. At approximately 3:15pm, LLOYD exited his postal vehicle carrying a package and returned to the driver's area shortly after without the package and with cash money. At approximately 3:20pm, a black male appeared at LLOYD's door and handed him a small package of suspected drugs.

On July 30, 2020, surveillance cameras recorded LLOYD and a suspicious parcel. Cameras recorded LLOYD scanning the parcel as delivered when he was more than 2 miles from the delivery address. At approximately 12:43pm, the previously identified silver Ford Taurus pulled behind LLOYD's mail vehicle and a black male exited the vehicle and approached LLOYD in the mail vehicle. LLOYD was seen giving the parcel to the black male and receiving cash money and suspected drugs in the exchange. After the black male left the area, LLOYD was seen counting the money he had just received.

On August 25, 2020, OIG inspectors were alerted to a suspicious parcel with a delivery address on LLOYD's route, R049. On August 28, 2020, OIG inspectors obtained a federal search warrant for the suspicious parcel and upon opening it found approximately 2 pounds and 4 ounces of suspected marijuana.

OIG inspectors obtained a court order authorizing a tracker to be placed in the package and on September 1, 2020 conducted a controlled delivery of the marijuana parcel with the assistance of Texas State Troopers. As inspectors and troopers watched, at approximately 1:33pm, a black Jaguar sedan with temporary tags pulled up across the street from where LLOYD had parked his mail vehicle. A black male exited the vehicle and approached LLOYD who was seated in his mail vehicle. LLOYD handed the black male the parcel after which the black male walked back to the black Jaguar with the parcel and got in the vehicle. Inspectors and troopers moved in and placed

LLOYD under arrest, recovered the parcel from the black Jaguar and identified the black male as Edell Storey, Jr. Storey was also arrested. In a search of the black Jaguar incident to arrest, a small amount of marijuana and a cell phone were recovered.

The parties agree that the defendant, Warren R. LLOYD, Sr. is held responsible for no more than 158 pounds of marijuana.

### Breach of Plea Agreement

12. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

13. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest unless Defendant obtains the prior written permission of the United States.

11

14. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

15. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

16. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Forfeiture

17. Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

18. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

19. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

20. Subject to the provisions above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

21. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

22. This written plea agreement, consisting of 15 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _7-7_, 2022.

_Warren R. Lloyd_
Defendant

Subscribed and sworn to before me on _July 7_, 2022.

NATHAN OSCHNER, Clerk
UNITED STATES DISTRICT CLERK

By: _Anderson_
Deputy United States District Clerk

APPROVED:

JENNIFER B. LOWERY
United States Attorney

By: _[signature]_
RICHARD D. HANES
Assistant United States Attorney
Southern District of Texas

_[signature]_
Attorney for Defendant

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **CRIMINAL NO. H-21-404** |
| | § | |
| **WARREN R. LLOYD, Sr.,** | § | **JUDGE SIM LAKE** |
| **Defendant.** | § | |

**PLEA AGREEMENT -- ADDENDUM**

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     7-7-2022
Attorney for Defendant           Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____     7-7-2022
Defendant                          Date

15